UNITED STATES DISTRICT COURT OF THE WESTERN DISTRICT, PENNSYLVANIA

| | | |
|---|---|---|
| Stephanie Mraz, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff | ) | No. 05-129 E |
| | ) | |
| Vs. | ) | |
| | ) | |
| Mr. Tile, Inc. and Sanford Cooperman, | ) | |
| Individually as owner and operator of | ) | A JURY TRIAL IS DEMANDED |
| Mr. Tile, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**AND KNOW,** comes Stephanie Mraz, through her attorneys THE LINDSAY LAW FIRM, P.C., Alexander H. Lindsay, Jr., Esquire and Edith Lynne Sutton, Esquire and brings this Complaint in Civil Action against Defendants Mr. Tile, Inc., and Sanford Cooperman for Violation of the American with Disabilities Act, Wrongful Termination based on Public Policy, Title VII Sexual Discrimination, and a pendant state claim for Intentional Infliction of Emotional Distress, and in support thereof, avers the following:

### I.  INTRODUCTION

1. This is a civil action at law to redress violations of the Plaintiff's rights under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964 and Wrongful Termination in addition to a pendant state claim for Intentional Infliction of Emotional Distress and Wrongful Termination.

### II.  JURISDICTION AND VENUE

2.  This action arises under Title 42 U.S.C.A. §12101 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-31(a), and this Court has jurisdiction of the action pursuant to 28 U.S.C. §1331 and §1343.

### III.   PARTIES

3.  The Plaintiff, Stephanie Mraz ("Plaintiff"), is an adult individual who resides at RD#1, Box 149, Grand Valley, PA  16420

4.  The Defendant, Sanford Cooperman ("Defendant Cooperman"), is an adult individual owning and operating the Defendant, Mr. Tile, Inc..

5.  The Defendant Mr. Tile ("Defendant Mr. Tile"), is a business operaqting under the laws of the Commonwealth of Pennsylvania, located at 13584 State Rt. 422 Kittanning, PA  16201.

### IV.   FACTUAL ALLEGATIONS

6.  The Plaintiff began working at Defendant Mr. Tile in January 19, 1998.

7.  The Plaintiff was on maternity leave from approximately January 14, 2000 and retuned to Defendant Mr. Tile, Inc. from maternity leave on or about May 1, 2000.

8.  Upon the Plaintiff's return, from maternity leave, she was given no desk, but was told to "help anyone in the office that needed help" and to help Cathy who was the employee in charge of the Service Department.

9.  Prior to her maternity leave, the Plaintiff had only been required to work every fourth weekend including Friday evening in addition to her daytime hours.

10. Upon her return from maternity leave, the Plaintiff was given a new schedule, which required her to work every Friday night in addition to her daytime hours plus every fourth weekend.

11. None of these changes were ever discussed with the Plaintiff prior to her maternity leave.

12. When the Service Department Manager (Cathy) quit, the Plaintiff took over the Service Department and referred to herself as the Service Department Manager to which no one ever said otherwise.

13. In the role of the Service Department Manager, the Plaintiff successfully cleared out several accounts that dated back several years; she also cleared out the Winner's Only account consisting of several thousand dollars.

14. In late September, early October of 2002, the Plaintiff went on medical leave after she was diagnosed with a rare form of cervical cancer.

15. The Plaintiff was on leave for approximately seven months.

16. Prior to her return to work the Plaintiff asked for long-term disability too although she had been granted short-term disability.

17. In April of 2003 although much of her treatment had been completed, at that time, the Plaintiff was still experiencing an extreme amount of fatigue.

18. Dr. Delgado, the Plaintiff's oncologist, referred her back to her primary care physician to address the issue of fatigue and possible depression, although he did indicate that her treatment for the cancer was complete.

19. While on medical leave, the Plaintiff had expressed to General Manager Gary Klingensmith her concerns about not having a job when she returned to work.

20. Mr. Klingensmith told her not to worry, and assured that her job would still be waiting for her no matter how long it took for her to recover.

21. Mr. Klingensmith further indicated to the Plaintiff that she just needed to concentrate on getting healthy and getting her strength back.

22. Prior to her medical leave, the Plaintiff had worked 8:30 a.m. to 5:00 p.m. Monday through Friday with weekend rotations every fourth weekend.

23. Upon her return to work from medical leave Ms. Holmes, Assistant to the General Manager, suggested that the Plaintiff work two days per week for a total of four hours per day.

24. The Plaintiff suggested a schedule of working the weekend rotations and at least three or four days per week at reduced hours until she had regained her strength.

25. Ms. Holmes said that working that many hours would probably be too much and that none of the girls in the office had complained about working more weekends.

26. Ms. Holmes informed the Plaintiff that she had discussed the hours with Mr. Klingensmith.

27. Ms. Holmes and Mr. Klingensmith determined that the Plaintiff should work Tuesdays and Thursdays from 2:00 p.m. until 6:00 p.m.

28. Upon the Plaintiff's return to work, Ms. Holmes had a general discussion with her about changes instituted in the office conduct during the Plaintiff's medical leave.

29. The only topics that were directed specifically to the Plaintiff were her workload and duties.

30. At the end of June 2003, during inventory and less than a month after the Plaintiff's return to work, the Plaintiff was asked to work as long as seven hours a day plus Saturday.

31. Ms. Holmes insisted on several occasions that the Plaintiff work these hours despite her condition.

32. The Plaintiff continued experiencing bladder problems resulting from the cancer treatment and extreme fatigue.

33. In mid-summer 2003, another co-worker at Defendant Mr. Tile became seriously ill and had to be on medical leave.

34. During this time, the Plaintiff was asked to handle the duties of that full-time position in addition to trying to keep up her own full-time duties <u>while working only part-time</u>.

35. The Plaintiff worked at least 22 hours a week during the time that the co-worker was on medical leave.

36. When the co-worker returned, the Plaintiff resumed her two days, four hours per day schedule.

37. In late September and early October, the Plaintiff was feeling sufficiently recovered that she repeatedly asked to have her hours increased.

38. Despite the Plaintiff's request to various management members, no additional hours were forthcoming. And for that matter, other questions she had regarding vacation time accrued prior to sick leave.

39. The Plaintiff drafted a letter in response to her continued efforts to obtain additional hours in the hopes that the letter would result in her getting an answer from someone in management regarding her requests.

40. When management still refused to give the Plaintiff the additional hours that she requested, she applied for Unemployment Compensation.

41. This was her legal remedy to the reduced hours and pay following her illness and subsequent recovery.

42. After the Plaintiff applied for Unemployment Compensation, Defendant Mr. Tile terminated the Plaintiff on November 10, 2003.

43. Although, the Defendant Mr. Tile contends that the Plaintiff performance was less than it should have been, however at no time was the Plaintiff ever informed of a poor work performance.

44. The Defendant Mr. Tile's Employee Handbook indicated at the time that the Plaintiff worked that an employee is to receive a verbal warning and written warning; she received neither.

45. The Defendant Mr. Tile asked the Plaintiff, a part-time employee recovering from a life-threatening illness to accomplish the full-time work of two employees.

46. The Plaintiff was penalized for asking to work full-time when she was ready and able.

47. The Plaintiff also contends that at least two male employees left their work voluntarily at Mr. Tile, Inc. and when they returned they were rehired with no loss of benefits or seniority.

48. Based on the preceding paragraph, the Plaintiff alleges that she was discriminated against on the basis of her gender, female.

## COUNT I

### Violation of Americans with Disabilities Act
### 42 U.S.C.A. §12101 et seq.

Stephanie Mraz v. Mr. Tile, Inc.

49. Paragraphs 1 through 48 are incorporated as if fully set out herein.

50. The Defendant intentionally discriminated against the Plaintiff in violation of the Americans with Disabilities Act by its discharge of her, in that it discharged her because it regarded her as disabled and because she had a record of being disabled.

51. As a direct and proximate result of said intentional and discriminatory conduct, the Plaintiff has lost wages, bonuses and other benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trail of this action.

52. The Defendant's discriminatory conduct exhibited a willful and/or reckless indifference to the Plaintiff's federally protected right to be free from disability discrimination.

**WHEREFORE**, the Plaintiff prays that this Court enter a judgment in her favor and grant her the maximum relief allowed by law, included but non limited to:

    a. back wages and quarterly bonuses in the amount to be determined at trial;

    b. reinstatement and/or front pay in the amount to be determined at trial;

    c. punitive and compensatory damages in the amount to be determined at trial;

    d. attorney fees, costs, pre and post judgment interest, and

    e. Such other relief as is just and equitable under the circumstances.

**A JURY TRIAL IS DEMANDED**

## COUNT II

**Wrongful Termination in Contravention of Public Policy**

Stephanie Mraz vs. Sanford Cooperman and Mr. Tile, Inc.

53. Paragraphs 1 through 52 are incorporated as if fully set out herein.

54. The Plaintiff was an at-will employee of the Defendants.

55. The Plaintiff filed for unemployment compensation because of her employer's refusal to return her to full-time work following her recovery from cancer.

56. The Defendants terminated the Plaintiff on November 10, 2000.

57. There was a public policy applicable to the circumstances of the termination in that the Plaintiff was terminated in retaliation for exercising her right to apply for Unemployment Compensation.

58. The Plaintiff was protected by the public policy.

59. The Defendants' motivation in terminating the Plaintiff violated the public policy.

60. The Plaintiff therefore avers that there was a causal connection between the protected activity and the adverse actions taken by the Defendants.

61. The Defendants have alleged wrongful actions on the part of the Plaintiff that were in fact untrue.

62. The Defendants' actions will have a lasting negative effect on the Plaintiff's ability to earn a living.

63. As a result of the Defendants' unlawful actions, the Plaintiff has been deprived of all the benefits and privileges of employment in an amount to be established at trial.

64. The Plaintiff is therefore entitled to such affirmative relief as may be appropriate under 42 U.S.C. §2000e-5(g).

**WHEREFORE**, the Plaintiff prays for an Order as follows: for back pay and damages for the Plaintiff's loss of earnings and benefits of the employment relationship in an amount to be determined on at trial. Damages are to include the costs, including attorneys' fees at the trial of this claim and any appeal and any other relief to which the Plaintiff is justly entitled. **A JURY TRIAL IS DEMANDED**.

### COUNT III

### Violation of Title VII of the Civil Rights Act
### 42 U.S.C. §2000e-31(a)

65. The Plaintiff hereby incorporates 1 through 64 as though the same were fully set forth at length.

66. The Plaintiff filed a charge of discrimination against the Defendants pursuant to the Title VII of the Civil Rights Act, 42 U.S.C. §2000e-31(a).

67. Said charge was filed within 300 days of the Defendants last discriminatory act against the Plaintiff.

68. On or about February 1, 2005, the Plaintiff received a Notice of Right to Sue from the EEOC, advising her that she had 90 days to file suit against the Defendants under the Title VII.

69. This letter signified exhaustion of the Plaintiff's administrative remedies with the EEOC.

**WHEREFORE**, the Plaintiff respectfully prays that this Court will:

Case 1:05-cv-00129-SJM    Document 1    Filed 05/03/2005    Page 10 of 11


    a.    issue a declaratory judgment that the acts, policies, practices, and procedures of the Defendant complained of herein violated and continue to violate the rights of the Plaintiff under Title VII of the Civil Rights Act of 1964, as Amended 42 U.S.C. §§2000e et seq.

    b.    Order the Defendants to make the Plaintiff whole by providing appropriate back pay and reimbursement for loss pension and other benefits and expenses in an amount to be shown at trial.

    c.    grant to the Plaintiff her attorney fees, costs and disbursements, and

    d.    grant such further and additional relief as the Court may deem proper.

**A JURY TRIAL IS DEMANDED**.

## PENDANT STATE CLAIM

## COUNT IV

### Intentional Infliction of Emotional Distress

Stephanie Mraz v. Mr. Tile and Mr. Cooperman

70. Paragraphs 1 through 69 are incorporated as if fully set out herein.

71. The Defendant engaged in the conduct described above recklessly or with the intent of causing the Plaintiff severe emotional distress.

72. The conduct of the Defendant was extreme and outrageous.

73. The Plaintiff incurred severe emotional distress as a result of the Defendant's conduct.

**WHEREFORE,** the Plaintiff avers that Defendants' intentional and reckless conduct caused her severe emotional distress and therefore, demands judgment against Defendants

in an amount in excess of $25,000.00, together with costs and attorneys' fees.  **A JURY TRIAL IS DEMANDED**.

          Respectfully submitted:

          THE LINDSAY LAW FIRM, P.C.

          */s/ Edith Lynne Sutton*
          Edith Lynne Sutton, Esquire
          Attorney for Plaintiff
          PA I.D. #79255

          128 South Main Street
          Butler, PA  16001
          724-282-6600