IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE MRAZ, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | Civil Action No.  05-129 |
| v. | ) | |
| | ) | Judge Sean J. McLaughlin |
| MR. TILE, INC. and SANFORD | ) | |
| COOPERMAN, Individually as owner and | ) | **A JURY TRIAL IS DEMANDED** |
| operator of MR. TILE, INC. | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Mr. Tile, Inc. ("Mr. Tile") and Sanford Cooperman, by and through

their counsel, Bethann R. Lloyd and Grogan Graffam P.C., file the following

Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

### I.    STATEMENT OF THE MATERIAL FACTS

Per Local Rule 56.1, the material and undisputed facts in support of Defendants'

Motion for Summary Judgment are set forth and filed separately in a Concise Statement

of Material Facts.   An Appendix of Exhibits has also been separately filed.

### II.    STATEMENT OF THE CASE

Plaintiff filed her Complaint on May 3, 2005 against Mr. Tile, Inc., her employer,

and Mr. Sanford Cooperman, its C.E.O. and former owner.     Therein she alleged the

following causes of action:

Count I :  Violation of Americans with Disabilities Act

Count II:  Wrongful Termination in Contravention of Public Policy

Count III: Violation of Title VII of the Civil Rights Act

Count IV: Intentional Infliction of Emotional Distress

By Order dated September 6, 2005, Count IV was dismissed and Mr. Cooperman was dismissed as a Defendant to the Title VII action.

## III.    ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

International Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Skinner Engine Co., 188 F.3d 130, 137 (3rd Cir. (Pa.) 1999). "Summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Indiana Hosp., 843 F.2d 139, 143 (3rd Cir. (Pa.) 1988) (1986). "While the moving party has the burden initially of identifying that evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of every element necessary to its case and on which it bears the burden of proof." Id.; See also, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A.    MR. TILE DID NOT DISCRIMINATE BY GENDER WHEN IT PROVIDED FULL-TIME EMPLOYEES GREATER BENEFITS THAN PART-TIME EMPLOYEES

Plaintiff alleges that Mr. Tile discriminated against her on the basis of her gender. (Cmplt ¶48).    She asserts a violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-31(a).  (Cmplt, Count III).  Title VII makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's sex.  42 U.S.C. §2000e-2(a).

The crux of Plaintiff's gender discrimination claim is that she received no benefits upon her return to work after a leave of absence, whereas two male employees who returned after a leave suffered no loss of benefits or seniority. (Cmplt ¶47).  Defendants acknowledge that there was a difference in benefits eligibility, but it had nothing to do with gender.  The male employees returned to <u>full-time</u> employment, whereas Plaintiff returned to <u>part-time</u> employment.

"In order to state a prima facie case of sex or gender discrimination under Title VII, Plaintiff must establish that: 1) she is a member of a protected class; 2) she was qualified for the position; 3) she suffered some form of adverse employment action; and 4) the circumstances suggest unlawful discrimination, such as when a similarly-situated person not of the protected class is treated differently." <u>Foroozesh v. Lockheed Martin Operations Support</u>, 2006 U.S. Dist. LEXIS 12789 *18 (W.D. Pa. 2006), <u>citing</u>, <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (U.S. 1973).

Assuming *arguendo* that the first three factors are met, Plaintiff cannot establish a prima facie case of gender discrimination by comparing the benefits she received as a female part-time employee to the benefits received by male full-time employees. When she returned to work, Plaintiff was scheduled to work only 8 hours per week. The male employees returned on a full-time basis.

Part-time employees of Mr. Tile do not receive the same benefits as full-time employees. This is confirmed in Mr. Tile's Employee Handbook, which summarizes the benefits to which full-time and part-time employees are eligible. No distinction is made in terms of gender, only full-time vs. part-time employment. Accordingly, Plaintiff has not established that she was similarly situated to the full-time males who returned to full-time work after a leave of absence.

To the extent Plaintiff complains in response to this Motion that she was never offered an opportunity to return to work on a full-time basis and thus never had an opportunity to regain her full-time benefits, this is refuted by her admission that she was physically incapable of working full-time. Her doctor advised her to reduce her hours. Initially, even after just a four hour shift, she felt fatigued. She was never released to return to work without restrictions. Regardless of what she desired mentally, physically she was not up to the task of working full-time. Moreover, after being off work for 8 months, Plaintiff had no legal entitlement to return to employment with Mr. Tile in any capacity.

There is no evidence in this case that Mr. Tile treated Plaintiff differently than any male part-time, 8 hour per week, employee with respect to her benefits. Therefore,

Defendants are entitled to judgment as a matter of law on Plaintiff's Title VII claim of gender discrimination.

>   **B.    PLAINTIFF'S ADA CLAIM MUST FAIL BECAUSE NEITHER THE STATED GROUNDS FOR HER TERMINATION, OR THE ALTERNATIVE REASONS PLAINTIFF BELIEVES ARE THE REAL REASONS FOR HER TERMINATION, HAVE ANY CONNECTION TO A DISABILITY.**

Plaintiff's Complaint alleges that she was discriminated against in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. (ADA). Specifically, the Complaint alleges that Mr. Tile terminated her because it regarded her as being disabled and because she had a record of being disabled. (Cmplt ¶50). However, when she was asked why she thinks she was terminated, her disability or a perceived disability was not among the reasons.

Plaintiff was specifically asked at her deposition why she thinks she was terminated. Plaintiff responded as follows:

>   Q.    Why do you think you were terminated?
>
>   A.    **Because I filed for unemployment and I was told – I was told by a couple of people within the office that they would not take kindly to that and that that would probably get me fired.**
>
>   Q.    Was that the only reason you thought that you were fired?
>
>   A.    **I believe it was a combination of several things.**
>
>   Q.    What were all the things?

> **A.**  **The general attitude towards me changed when I won the money at the company picnic. It started. It's very difficult to explain. I'm not sure why.**
>
> Q.  Do you best because this is your shot. I'm trying to understand why you think you were fired.
>
> **A.**  **I believe it was a combination of winning the money, asking for more hours, trying to be a good employee, do a good job. You know, then filing for the unemployment claim just kind of – I really think, you know, that was – as it was told to me that, you know, they would not take kindly to that.** (Mraz Depo. at 107).

Even assuming *arguendo* that all of these reasons were the true reason for Plaintiff's termination, none of these reasons have anything to do with having a disability, a record of having a disability or being regarded as disabled.

To avoid summary judgment on an ADA claim, Plaintiff must show a prima facie case of discrimination; the employer must then "articulate some legitimate, nondiscriminatory reason" for its decision; finally, Plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause" of the decision. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); See also, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

In this case, the analysis need not even get as far as the burden-shifting framework outlined above because Plaintiff has not met her burden to establish a prima

facie case of discrimination.    In order for a plaintiff to establish a prima facie case of discrimination under the ADA, the plaintiff must show: (1) she is a disabled person within the meaning of the ADA[1]; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).

Focusing on the third factor, there is no dispute that Plaintiff suffered an adverse employment decision—her termination from employment.    However, Plaintiff cannot demonstrate that her termination was the result of disability discrimination because she herself does not cite that as a factor.

Mr. Tile's stated reasons for terminating Plaintiff were that the office was "slow" due to a lack of work and that her performance was not fully satisfactory.[2]    Plaintiff does not believe these were the true reasons.    However, the reasons for which Plaintiff believes she was terminated, (winning the company picnic, requesting more hours and seeking

---

[1] A "disability", as defined by the ADA, includes being regarded as having such an impairment. " 42 U.S.C. §12102(2). "A person is 'regarded as' having a disability" if the person:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 766 (3d Cir. 2004), quoting, Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 188 (3d Cir. 1999), quoting, 29 C.F.R. § 1630.2(l).

[2] Defendants have not provided this Court with a summary of all of the financial issues involving the business or the performance issues involving the Plaintiff, as those facts, although well documented, will certainly be in dispute.    More to the point of the instant Motion, the reasons for which Plaintiff believes she was fired do not relate to any disability or perception of disability in violation of the ADA.

unemployment compensation) have no connection to a disability or perceived disability. There is absolutely no relationship between Plaintiff's disability or alleged perceived disability and her termination. Therefore, summary judgment in Defendants' favor on Plaintiff's ADA claim is warranted.

Although the termination of Plaintiff's employment is the sole stated basis for the ADA claim in Count I of the Complaint, because the Complaint alludes to other potential ADA issues, it is appropriate to address those issues as well so as to fully dispose of the ADA claim.

Plaintiff has not specifically alleged a failure to accommodate in the Complaint per the ADA. In fact, Mr. Tile clearly accommodated Plaintiff when she desired to return to employment by reducing her hours. To the extent that it is Plaintiff's claim that by offering her a reduced schedule, Mr. Tile regarded Plaintiff as disabled, this is refuted by her admission that she was physically incapable of returning to full-time employment. Plaintiff was not merely "regarded as" not being ready for full-time employment; in fact, she was not ready. Likewise, she was not ready for a weekend rotation. Plaintiff's doctor even recommended a reduced schedule.

The following excerpt from Plaintiff's deposition in reference to Plaintiff's offer to work a weekend shift is instructive:

> Q.    But were you capable of doing a nine-hour shift at that time [May of 2003]?
>
> A.    **Physically, no, but I offered.**
>
> Q.    But you offered to do something that you couldn't have done?
>
> A.    **Because I felt obligated and felt bad that everyone had filled in while I was gone. And**

**until I actually went into work and worked the four hours, I guess I did not realize exactly how fatigued, you know, how fatiguing that even four hours was. It was a lot.**

Q.    But to answer my question clearly – I'm not trying to put you on the spot, and maybe I am – but you were offering to do a shift that physically you knew you couldn't do, a nine-hour shift, correct?

A.    **Yes, because that's the type of employee I was. I went to work whether I was sick or not.** (Mraz Depo. at 32-34, Exh. C).

The above testimony demonstrates that the employer and the employee were engaged in an interactive process to accommodate the Plaintiff's return to the workforce. It also demonstrates that Plaintiff was offering to do more than what was realistic for her condition.

Mr. Tile was clearly aware of Plaintiff's diagnosis of cancer and treatment. Plaintiff had been on a medical leave for 8 months. Given that knowledge, Mr. Tile was not required to ignore the reality of Plaintiff's physical limitations in working out a schedule for her return to work. Further, Plaintiff had no legal right to dictate whatever schedule and hours she desired. The accommodation process is to be interactive, meaning that both the employer and the employee have input.

Furthermore, "[t]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996) aff'd, 94 F.3d 102 (3rd Cir. (Pa.) 1996). Moreover, an offer of accommodation does not, by itself, establish that an employer

'regarded' an employee as disabled. <u>Chubirka v. Int'l Paper/xpedx Paper & Graphics,</u> 2005 U.S. Dist. LEXIS 15839 *19 (E. D. Pa. 2005).

The Complaint also alleges that Plaintiff was asked on several occasions to work additional hours despite her condition of being fatigued and still recovering from cancer treatments. (Cmplt ¶30-35). It is not clear how this fits into Plaintiff's ADA claim, as there is no allegation of a failure to accommodate. Further, there is no evidence that Plaintiff requested any accommodation, other than reduced hours, which was granted.

In any event, there is no dispute that on one occasion for a week in late June of 2003, during the store's annual inventory, Plaintiff was asked to work some additional hours. All employees are asked to work a few extra hours during the annual inventory week. Plaintiff never requested to be relieved of this extra time. This does not demonstrate any violation of the ADA.

A month or two later, when another employee was out on a temporary medical leave, Plaintiff volunteered to work some additional hours while the other employee was out. Mr. Tile gave her the additional hours she requested at that time. She worked around 20 hours per week for three weeks until the other employee returned from leave. Plaintiff was not mandated to work extra hours on these occasions. These allegations fail to demonstrate any failure to accommodate per the ADA or any other ADA violation. Therefore, judgment against Plaintiff on her ADA claim is warranted.

### C.    PLAINTIFF HAS NO EVIDENCE THAT SHE WAS DISCHARGED BECAUSE SHE FILED AN UNEMPLOYMENT COMPENSATION CLAIM -- A CLAIM THAT WAS NOT CONTESTED BY HER EMPLOYER.

Plaintiff's final claim is for wrongful termination in contravention of public policy. (Cmplt, Count II).   She claims she was fired in retaliation for exercising her right to apply for Unemployment Compensation.  This claim has no connection to Plaintiff's discrimination claims, but is a separate state law cause of action.

"Generally, there is no common law cause of action for the discharge of an at-will employee."  Highhouse v. Avery Transp., 660 A.2d 1374, 1377 (Pa. Super. Ct. 1995).   "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." Id.  Such a cause of action was recognized by the Pennsylvania Superior Court in Highhouse which involved a claim for unemployment compensation.

Plaintiff's basis for believing her termination was retaliatory is the timing of the termination.  Plaintiff is of the impression that Mr. Tile received notice of the claim on a Friday (November 7th) and terminated her on the following Monday (November 10th). (Mraz Depo. at 111-112, Exh. C).   Plaintiff's belief is erroneous.  This is not a factual dispute, as the records clearly refute Plaintiff's belief as to the timing.

Plaintiff filed her claim for unemployment compensation on October 19, 2003. The Employer's Notice of Application was mailed out on October 27, 2003.  Notice of the financial decision was mailed on October 28, 2003.  Mr. Tile responded to a request for information by October 30, 2003.  Plaintiff was terminated on November 10, 2003. Accordingly, Plaintiff was not fired the Monday after Mr. Tile received notice of the claim or the award.

The undisputed facts involving the claim for unemployment compensation further refute any suggestion that Mr. Tile took retaliatory action against the Plaintiff.  After

Plaintiff filed for unemployment compensation, she was granted benefits. Mr. Tile did not oppose her claim. The Unemployment Compensation representative specifically told Plaintiff that Mr. Tile was not contesting the claim. Mr. Tile merely responded when information was requested, as any employer is required to do.

At some point, Plaintiff's benefits were temporarily suspended. This occurred after Plaintiff explained the reason for her termination to the Unemployment Compensation Representative. Ironically, it was after the Representative investigated by speaking with Mr. Tile that Plaintiff's benefits resumed. Thus, the information Mr. Tile supplied helped Plaintiff to receive benefits. None of these facts suggest any retaliatory action by Mr. Tile.

It is simply not logical for an employer to fail to contest an unemployment compensation claim, but then retaliate by firing the employee. No reasonable jury would believe this to be the case based on the facts presented. In the absence of any other evidence of proof of wrongful discharge other than Plaintiff's erroneous belief as to the timing, Plaintiff's wrongful discharge claim must fail.

**WHEREFORE**, Defendants Mr. Tile, Inc. and Sanford Cooperman respectfully request that their Motion for Summary Judgment be granted and the judgment be entered in their favor and against the Plaintiff.

Respectfully submitted,

GROGAN GRAFFAM, P.C.


s/Bethann R. Lloyd
Bethann R. Lloyd, Esquire
Pa. I.D. No. 77385
Four Gateway Center, 12th Floor
Pittsburgh, PA 15222
(412) 553-6300
ATTORNEYS FOR DEFENDANTS,
MR. TILE, INC. AND SANFORD COOPERMAN

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was served upon the following parties of record on this 23rd day of May, 2006 via U.S. Mail, first class, postage pre-paid:

Edith Lynne Sutton, Esquire
11 Sunset Court
Cranberry Township, PA 16066
**Counsel for Plaintiff**

s/Bethann R. Lloyd
Bethann R. Lloyd, Esquire

{58955-00002 W0165011.1 }