IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHANIE MRAZ, | : |
| | :   Civil Action No. 05-129 |
|     Plaintiff, | : |
| | :   Judge Sean J. McLaughlin |
| v. | : |
| | : |
| MR. TILE, INC. and SANFORD | : |
| COOPERMAN, Individually as owner | : |
| And Operator of MR. TILE, INC. | : |
| | : |
|     Defendant. | : |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**AND NOW**, comes the Plaintiff, Stephanie Mraz, by and through her attorneys, THE LINDSAY LAW FIRM, P.C. and Edith Lynne Sutton, Esquire, and files the following Brief in Opposition to Defendant's Motion for Summary Judgment.

**PROCEDURAL HISTORY OF CASE**

The Plaintiff does not dispute the Defendants' description of the procedural background of this matter, which description is presented in the Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment and otherwise herein incorporates the contents of her pre-trial statement that further explains the background of this case.

## ISSUES PRESENTED

Whether the Plaintiff has sufficient evidence of record to establish that genuine issues of fact exist with respect to her claims for violation of the ADA; gender discrimination on the basis of her gender – female; and Wrongful Termination in Contravention of Public Policy.

## LEGAL STANDARD

As Pennsylvania law provides, a motion for summary judgment may only be properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b).  The trial court must review the record presented in support of the motion in the light most favorable to the nonmoving party.  ***Washington Federal Savings and Loan Association v. Stein***, 357 Pa. Super. 286, 515 A.2d 980 (1986).  Controverted issues are not to be decided, but instead the court must only determine whether there is an issue of fact to be tried.  *Id.*  All doubts must be resolved against the party moving for summary judgment.  *Id.*  The Trial Court is limited to reviewing the record filed in support of and in opposition to the motion for summary judgment and only those allegations in the pleadings, which remain uncontroverted.  *Id.*  If the moving party adequately supports their motion for summary judgment, the burden shifts to the non-moving party to present evidence, which supports their argument in opposition to summary judgment.  ***Roland v. Kravco, Inc***., 355 Pa. Super 493, 513 A.2d 1029 (1986).  Where, however, the moving party has supported their motion with oral testimony or affidavit, genuine issues of material fact will be dependent upon the

credibility and demeanor of the moving party's witnesses and, therefore, summary judgment will not be proper.  **Nanty-Glo v. American Surety Co.,** 309 Pa. 236, 163 A. 523 (1932).  Even in the absence of counter-affidavits, summary judgment will not be granted where genuine issues of fact remain unresolved.  **Wright v. North American Life Assurance Co.**, 372 Pa. Super. 272, 539 A.2d 434 (1988).

## **LEGAL ARGUMENT**

### A.  **PLAINTIFF'S GENDER DISCRIMINATION CLAIM.**

In their Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Memorandum"), the Defendants allege that the Plaintiff was not discriminated against on the basis of her gender.  The Defendants attempt to refute the Plaintiff's claim by contrasting the benefits provided to part-time employees as opposed to what was provided to full-time employees.

The rationale that the Defendants' disparate treatment of the Plaintiff in contrast to the treatment of the male employees who had quit their jobs at the Defendant Mr. Tile and returned much later was based on full-time versus part-time is pretextual.  Upon her initial return to work following her cancer treatment, the Plaintiff does not contend that while she worked part-time and was not accorded full-time benefits was discriminatory.  What she is contending is that she should not have lost the benefits that she had already earned at the Defendant Mr. Tile prior to her illness.  Defendant Cooperman told the Plaintiff that she was off "too long" for her illness and therefore was considered a new employee.

In stark contrast, two male employees voluntarily left their employment at the Defendant Mr. Tile. When they decided to return to employment at the Defendant Mr. Tile, they were not told that they were to be treated as "new employees". Rather they were returned to the same levels of seniority and benefits that they had achieved prior to their voluntary departure from the company.

This is clarified by the Plaintiff in her disposition testimony as follows:

Q. What gives you the impression that you would have been entitled to a bonus given that you hadn't worked since October of 2002 that year?

A. The bonuses usually came out in November. I was gone for less than a month. That bonus would have been based on my working from January to the time of my leave of absence in October, which again was through no choice of my own. (Mraz Deposition at page 23)

The fact that male employees were provided with different treatment upon their return from a voluntary leave from employment as opposed to the treatment accorded the Plaintiff who was returning from an involuntary leave as the result of a life threatening illness is clearly discriminatory on the basis of gender. Furthermore the credibility of this issue should be reserved for a jury and not for a Motion for Summary Judgment.

### B. PLAINTIFF'S ADA CLAIM

In their Memorandum, the Defendants state that the Plaintiff must show a *prima facie* case of ADA discrimination in order to avoid the granting of the Motion for Summary Judgment. They further state that the "Plaintiff must 'point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

4

discriminatory reason was more likely than not a motivating or determinative cause' of the decision."

The Defendants claim that the Plaintiff has failed to establish a *prima facie* case for her ADA claim.   This is because she did not specifically mention their perception of her as disabled as a reason for her termination during a portion of her deposition.  As is prevalent throughout much of the Defendants' Memorandum, excerpts from the Plaintiff's deposition are touted as proof that there is no evidence.  However, in this as in many other instances in the Defendants' memorandum, the Plaintiff's responses in the deposition are taken out of context and do not dispel her ADA claim.

The facts of this case are that an employee became seriously ill resulting in a lengthy leave of absence.  Upon her return to work, not only did her doctor suggest reduced hours, her employer suggested them and even pressed the issue when the Plaintiff expressed a desire to work more hours.  This is borne out by the Plaintiff's deposition testimony as follows:

> A. …Her response [Ms. Holmes] was don't worry about the weekend rotation.  How did she state that – that the girls have been filling in.  They don't really mind – was her response to me offering to fill in a weekend rotation also.
>
> Q. In response to her saying the girls don't really mind, they can handle it, did you tell her, no, I'm ready to work the weekend rotation?  I want to do it.
>
> A. I presented her with this, and she again was, you know, that's when she really started in with, you know, **we've come up with two days a week, four hours a day, to start you back and then to work into more hours.** [Emphasis added.] (Mraz deposition at page 31.)

Clearly, the Plaintiff had never been through cancer with all its attendant treatments before.  Clearly, although she knew she was tired, she did not understand that it would take a period of time for her to regain her strength and stamina to the point

5

that she could work full-time again. It was not until she returned to work that she realized the extent of her fatigue and other attendant physical maladies involving, but not limited to, bladder problems, that did not abate for some time.

The Plaintiff was a full-time employee prior to her illness and had every belief that she would eventually return to full-time employment where she had worked for years prior to her illness. Gary Klingensmith, General Manager of Mr. Tile continually assured the Plaintiff that her position would remain available to her and encouraged her to participate in company activities reserved for full-time employees.

This again is borne out in the Plaintiff's deposition testimony as follows:

Q. Now, nobody specifically told you, hey, eight to nine hours a week is part time. But you certainly understood eight to nine hours is part-time hours, correct?

A. Correct, with the understanding that I would gradually add more hours as I started feeling healthy. And then during our company picnic, I was placed in the full-time employee drawing, which was for $500.

Q. Well, being in a company drawing doesn't make you a full-time employee when you are working eight to nine hours, does it?

A. Yes. In regards to that situation at the company picnic, it was very clearly stated you had to be a full-time employee for a year in order to be in a cash drawing for $500. (Mraz deposition at page 63.)

Q. So how did it end up that you were in the drawing?

A. Three managers [Gary Klingensmith, John McCann, Travis McCann] told me I was still considered a full-time employee and that I ha not lost any status or benefits, which prior to that, it had never crossed my mind that benefits were taken away from me. You know, it just never crossed my mind. I wasn't asking for benefits or vacation time, you know, during that time period. (Mraz deposition at page 65.)

Q. So is it fair to say during that period of time that you were off, a long period of time, nobody ever suggested that your employment would be terminated.
A. Gary Klingensmith himself – I had at one point raised that issue knowing the history of Mr. Tile that when you are gone for a lengthy period of time,

6

> they see fit to remove you. And I expressed that concern to him that I was worried about my job security coming back, and he, you know – and it is within the documentation that he stated, don't worry about it, just concentrate on getting better, your job will be here waiting for you when you get back. (Mraz deposition at page 92).

Throughout her recuperation she continually attempted more hours and strived to do all that she could to be a cooperative and valuable employee. She has never raised the issue of accommodation. The only ADA issues that have been raised by the Plaintiff are that the Defendants continued to perceive her as a disabled individual even once she had regained her strength and the side effects of her treatments had been resolved. The foregoing was evidenced by the fact that despite the Defendants' averments that there was a slow down, other employees doing similar work were actually working overtime. Once again, the Plaintiff claims that the Defendants' proffered reasons for not permitting her to return to full-time employment was pretextual. They had come to perceive her as disabled and not able to work a regular full-time position.

### C.   **PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

After returning to work, after being striped of her seniority, and after being refused additional hours, the Plaintiff filed for Unemployment Compensation to supplement the hours she was limited by the company to working. The proximity alone of the Plaintiff's application for Unemployment Benefits and her termination by the company casts doubt on any pretextual reasons the employer could have given for her termination.

The Third Circuit court has held in various cases including ***Jenson v. Potter,*** 435 F.3d 444 (3d Cir. 2006) and ***Krouse v. American Sterilizer Co.,*** 126 F.3d 494, 503-04 (3d Cir. 1997) that a close proximity between a protected activity and possible discrimination is "usually suggestive of retaliatory motive."

This was also supported by the Third Circuit in its decision in ***Woodson v. Scott Paper,*** 109 F.3d 913 (3rd Cir. 1997), when it held that "temporal proximity between the protected activity and the termination is sufficient to establish a causal link."  In ***Woodson*** the proximity was much longer than in the case at bar.

The Defendants claim that they did not contest the Unemployment Compensation Benefits and therefore could not be in violation of Wrongful Termination in Violation of Public Policy.  This was despite the fact that the Defendants initially alleged a "slow down" and then ultimately claimed that the Plaintiff was an unsatisfactory employee despite the fact that no documentation was ever made known to the Plaintiff or for that matter placed in her personnel file.

The Defendants' own Handbook which they refer to states under Counseling And Discipline at page 27:

To ensure the well being of all employees, violations of Mr. Tile regulations or standards will result in corrective action appropriate to the offense.  The severity of corrective action in response to the violation will be determined by such considerations as the impact of the offense on the store's operations, the extent of damage caused and the circumstances of the offense.  Routine disciplinary procedures normally begin with an informal verbal counseling session, followed by formal documentation in writing and ultimately to possible termination.

As a guideline to normal corrective action, Mr. Tile has established a sequence of progressive steps in the disciplinary process:

1. Verbal counseling (informal) with documentation to the personnel file.

2. Written warning (formal) with documentation to the personnel file.

3. Suspension or termination.

With regard to the Defendants' pretextual claim that the Plaintiff had a poor work performance, it is interesting to note that they did not follow their own guidelines. The Plaintiff never received verbal counseling and no written warnings were ever given to her prior to her termination.

Also on page 27 of the Handbook under Performance Evaluations the Defendants state that "Wage increases are based on merit and standard wage ranges for like work in your locale." The Plaintiff routinely received raises during her tenure at Mr. Tile indicating merit, <u>not poor performance</u>.

Finally, the pretextual nature of the Defendants claims are once again supported by the Plaintiff's deposition testimony at pages 50 and 55 of her deposition transcript which states:

A. To the best of my recollection, I stated to Lois that I was starting to feel stronger. And work was backing up. Things were not getting done. Would I be allowed to work more hours.

Q. And what did she say to you?

A. She would check with Gary. And nobody ever answered me.

Q. And that conversation happened somewhere in the neighborhood of September of 2003?

A. To the best of my recollection, yes. (At page 50.)

9

> Q. And that was your words as far as work backing up, things need to be done? That's what you were saying, correct?
>
> A. Yes. And then Mr. Tile at one point admits to finding paperwork on my desk. That was their reason I was fired was for poor performance. And their last response was that things were sitting there that should have been taken care of and return authorizations sent back to the factory, credit memos attached, what have you, that weren't being done. And that was their response. So that's why I was fired for poor performance. (At page 55.)

The Third Circuit while noting the benefits of summary judgment has previously held that

> … greater caution must be exercised by District Court in granting summary judgment in employment discrimination cases where employer's intent is genuinely at issue because employers are rarely so cooperative as to include notation in personnel file that firing is for a reason expressly forbidden by law.
>
> Fed.RulesCiv.Pro.Rule 56, 28 U.S.C.A., **Bennett v. Watson Wyatt & Co.,** 136 F.Supp. 2d 236 (S.D.N.Y. 2001).

This distinction in employment cases has been reiterated by the Third Circuit in its holding that summary judgment in such cases

> …is appropriate only in those rare instances where there is no dispute of fact and where there exists only one conclusion; because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless evidence could not support any reasonable inference for nonmovant.
>
> **Crawford v. Runyon**, 37 F3d 1338 (1994).

## **CONCLUSION**

The Third Circuit has previously held in summary judgment actions involving employment law that "employer must persuade court that even if all of inferences which could reasonably be drawn from evidentiary materials of record were viewed in light

10

most favorable to plaintiff, no reasonable jury could find in plaintiff's favor. **Marzano v. Computer Science Corp.,** 91 F.3d 497 (1996, CA3NJ).

The Defendants attempt to persuade the court with an affidavit signed by the Defendant Sanford Cooperman, however, it can be shown that most of his sworn statement is based upon hearsay and not his personal knowledge. The Third Circuit has found such evidence lacking.

> Allegations made solely upon information and belief, without any supporting evidentiary facts, and denied by opposing party, should play no role whatsoever in summary judgment proceedings."
>
> **Baker v. Latham Sparrowbush Assocs.,** (1995, CA2NY) 72 F3d 246.

It is averred that the Plaintiff has sufficiently demonstrated "weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons" as outlined in **Furentes v. Perskie,** 32 F.3d 759 (3d Cir. 1994).

As was the case when the Defendants' attempted to have this case dismissed earlier, the Plaintiff clearly has demonstrated that there are numerous issues of disputed fact and evidence to support them that have been born out by the discovery process. These are sufficient to overcome the Defendant's Motion for Summary Judgment. Therefore, the Defendant's request for Summary Judgment must be denied.

          Respectfully submitted,

          s/ *Edith Lynne Sutton*
          Edith Lynne Sutton, Esquire
          Attorney for Plaintiff